| | |
|---|---|
| **DISTRICT COURT, WELD COUNTY, COLORADO**<br>901 9th Avenue<br>P.O. Box 2038<br>Greeley, CO 80632<br>Main Telephone: (970) 475-2400 | DATE FILED<br>September 15, 2025 2:57 PM<br>FILING ID: EAFFB0693776D<br>CASE NUMBER: 2025CV30892 |
| Plaintiff: **JANINA TABAKA**<br><br>v.<br><br>Defendants: **WALMART, INC., WAL-MART, WAL-MART SUPERCENTER #, WAL-MART SUPERCENTER, and DE LAGE LANDEN FINANCIAL SERVICES, INC.** | **▲COURT USE ONLY▲** |
| **Attorneys for Plaintiff:**<br>Nathan T. Mattison, #38627<br>Ashlyn N. Smith, #61130<br>Law Offices of Dianne Sawaya, LLC<br>4500 Cherry Creek Drive South, Suite 1030<br>Denver, CO 80246<br>Phone Number: (303) 758-4777<br>Fax Number: (303) 758-4779<br>E-mail: nmattison@dlslawfirm.com<br>asmith@dlslawfirm.com | Case Number:<br><br>Division: |
| **COMPLAINT** | |

Plaintiff, Janina Tabaka, by and through counsel at Law Offices of Dianne Sawaya, for her Complaint against the Defendants (1) Walmart, Inc., (2) Wal-Mart, (3) Wal-Mart Supercenter #, (4) Wal-Mart Supercenter, and (5) De Lage Landen Financial Services, Inc. (collectively hereinafter "Defendants"), states and alleges as follows.

## I. PARTIES

### A. Plaintiff

1. Upon information and belief, at all relevant times, Janina Tabaka (hereinafter "Plaintiff" or "Ms. Tabaka") was and is a resident of the State of Colorado, with an address in Berthoud, Colorado.

### B. Defendant Walmart, Inc. ("Defendant Walmart, Inc.")

2. Upon information and belief, at all relevant times, Defendant Walmart, Inc. (hereinafter "Defendant Walmart, Inc.") was a foreign corporation, formed in Delaware, with its principal office street address located at 702 SW 8th St., Bentonville, AR 72716, who is the titled owner of the real property, with a street address of 2285 E Ken Pratt Boulevard, Longmont, CO 80504 (the "Property").

3. Upon information and belief, at all times relevant, the Property was owned and/or operated by Defendant Walmart, Inc.

4. Upon information and belief, at all relevant times, Defendant Walmart, Inc. was doing business in Colorado, including the business activities of owning and/or operating, managing and/or otherwise overseeing the activities conducted on the Property.

5. Upon information and belief, at all relevant times, Defendant Walmart, Inc. was an entity which owned and/or operated Wal-Mart Supercenter #905, a large-scale retail store, on the Property, with a physical address of 2285 E Ken Pratt Boulevard, Longmont, CO 80504.

6. Upon information and belief, at all relevant times, the Weld County Assessor's office lists Defendant Walmart, Inc. as the owner of the Property, with schedule/parcel number 131307203001 and an address of 2285 E Ken Pratt Boulevard.

7. Upon information and belief Defendant Walmart, Inc. was an entity which was registered with the Colorado Secretary of State and was authorized to do business in Colorado.

8. Defendant Walmart, Inc.'s registered agent and for whom service of process may be accepted is CT Corporation System located at 7700 E Arapahoe Rd., Suite 220, Centennial, CO 80112.

9. Upon information and belief, at all relevant times, Defendant Walmart, Inc. has made express and implied representations that the public is requested, expected, or intended to enter or remain on the Property.

10. Specifically, Plaintiff entered the Property to purchase groceries at the time the of injury.

11. Upon information and belief, at all relevant times, Defendant Walmart, Inc. was doing business in Colorado, including the business activities of owning and/or operating, managing and/or otherwise overseeing the activities conducted on the Property.

12. Upon information and belief, at all relevant times, Defendant Walmart, Inc.'s business activities in Colorado included performing such activities regarding the Property.

13. Upon information and belief, Defendant Walmart, Inc. was responsible for any dangerous activities taking place on the Property at the time of Plaintiff's injuries.

**C. <u>Defendant WAL-MART (Defendant WAL-MART)</u>**

14. Upon information and belief, at all times relevant hereto, Defendant WAL-MART, was a trade name registered within the State of Colorado.

15. Upon information and belief, at all relevant times, Defendant WAL-MART was owned and/or operated by Defendant Walmart, Inc.

16. Upon information and belief, at all times relevant, Defendant Walmart, Inc. was doing business under (or additionally by) the trade name of Defendant WAL-MART.

17. Upon information and belief, at all relevant times, Defendant Walmart, Inc. was an entity which was registered with the Colorado Secretary of State and was authorized to do business in Colorado.

18. Upon information and belief, at all relevant times, Defendant Walmart, Inc. was a foreign corporation, formed in Delaware, with its principal place of business's street address located at 702 SW 8th St., Bentonville, AR 72716.

19. Upon information and belief, Defendant Walmart, Inc.'s registered agent and for whom service of process may be accepted is CT Corporation System located at 7700 E Arapahoe Rd., Suite 220, Centennial, CO 80112.

20. Upon information and belief, at all relevant times, Defendant WAL-MART has made express and implied representations that the public is requested, expected, or intended to enter or remain on the Property.

21. Specifically, Plaintiff entered the Property to purchase groceries at the time of the injury.

22. Upon information and belief, at all relevant times, Defendant WAL-MART was doing business in Colorado, including the business activities of owning and/or operating, managing and/or otherwise overseeing the activities conducted on the Property.

23. Upon information and belief, at all relevant times, Defendant WAL-MART's business activities in Colorado included performing such activities regarding the Property.

24. Upon information and belief, Defendant WAL-MART was responsible for the presence of any dangerous activities taking place on the Property at the time of Plaintiff's injuries.

**D. <u>Defendants WAL-MART Supercenter # and WAL-MART Supercenter (collectively Defendants WAL-MART Supercenters)</u>**

25. Upon information and belief, at all relevant times, Defendant WAL-MART Supercenter # was a trade name registered within the State of Colorado.

26. Upon information and belief, at all relevant times, Defendant WAL-MART Supercenter was a trade name registered within the State of Colorado.

27. Upon information and belief, at all relevant times, Defendant WAL-MART Supercenter # and Defendant WAL-MART Supercenter (hereinafter collectively Defendants WAL-MART Supercenters) were owned and/or operated by Defendant Walmart, Inc.

28. Upon information and belief, at all times relevant, Defendant Walmart, Inc. was doing business under (or additionally by) the trade names of Defendants WAL-MART Supercenters.

29. Upon information and belief, at all relevant times, Defendant Walmart, Inc. was an entity which was registered with the Colorado Secretary of State and was authorized to do business in Colorado.

30. Upon information and belief, at all relevant times, Defendant Walmart, Inc. was a foreign corporation, formed in Delaware, with its principal place of business's street address located at 702 SW 8th St., Bentonville, AR 72716.

31. Upon information and belief, Defendant Walmart, Inc.'s registered agent and for whom service of process may be accepted is CT Corporation System located at 7700 E Arapahoe Rd., Suite 220, Centennial, CO 80112.

32. Upon information and belief, at all relevant times, Defendants WAL-MART Supercenters have made express and implied representations that the public is requested, expected, or intended to enter or remain on the Property.

33. Specifically, Plaintiff entered the Property to purchase groceries at the time of the injury.

34. Upon information and belief, at all relevant times, Defendants WAL-MART Supercenters were doing business in Colorado, including the business activities of owning and/or operating, managing and/or otherwise overseeing the activities conducted on the Property.

35. Upon information and belief, at all relevant times, Defendants WAL-MART Supercenters' business activities in Colorado included performing such activities regarding the Property.

36. Upon information and belief, Defendants WAL-MART Supercenters were responsible for the presence of any dangerous activities taking place on the Property at the time of Plaintiff's injuries.

**E. <u>Defendant De Lage Landen Financial Services, Inc. (Defendant De Lage)</u>**

37. Upon information and belief, at all relevant times, Defendant De Lage Landen Financial Services, Inc. (hereinafter "Defendant De Lage") was a foreign corporation, formed in Michigan, with its principal office street address located at 1111 Old Eagle School Road, Wayne, PA 19087, who is the titled owner of the real property, with a street address of 2285 E Ken Pratt Boulevard, Longmont, CO 80504 (the "Property").

38. Upon information and belief, at all times relevant, the Property was owned and/or operated by Defendant De Lage.

39. Upon information and belief, at all relevant times, Defendant De Lage was doing business in Colorado, including the business activities of owning and/or operating, managing and/or otherwise overseeing the activities conducted on the Property.

40. Upon information and belief, at all relevant times, Defendant De Lage was an entity which owned and/or operated Wal-Mart Supercenter #905, a large-scale retail store, on the Property, with a physical address of 2285 E Ken Pratt Boulevard, Longmont, CO 80504.

41. Upon information and belief, at all relevant times, the Weld County Assessor's office lists Defendant De Lage as the owner of the Property, with schedule/parcel number 131307203001 and an address of 2285 E Ken Pratt Boulevard.

42. Upon information and belief Defendant De Lage was an entity which was registered with the Colorado Secretary of State and was authorized to do business in Colorado.

43. Defendant De Lage's registered agent and for whom service of process may be accepted is Corporation Service Company located at 1900 W Littleton Blvd., Littleton, CO 80120.

44. Upon information and belief, at all relevant times, Defendant De Lage has made express and implied representations that the public is requested, expected, or intended to enter or remain on the Property.

45. Specifically, Plaintiff entered the Property to purchase groceries at the time of the injury.

46. Upon information and belief, at all relevant times, Defendant De Lage was doing business in Colorado, including the business activities of owning and/or operating, managing and/or otherwise overseeing the activities conducted on the Property.

47. Upon information and belief, at all relevant times, Defendant De Lage's business activities in Colorado included performing such activities regarding the Property.

48. Upon information and belief, Defendant De Lage was responsible for any dangerous activities taking place on the Property at the time of Plaintiff's injuries.

**F. Subject Tort**

49. Upon information and belief, one or more of the Defendants committed a tort arising out of their ownership of, performance of operations, management, control, or other activities at or on the Property in Weld County, Colorado, forming the basis for this case.

## II. JURISDICTION AND VENUE

50. Jurisdiction is proper pursuant to Article 6 § 9 of the Colorado State Constitution.

51. Pursuant to C.R.C.P. 98, venue is proper in Weld County because:

   a. Pursuant to C.R.C.P. 98(c)(5), venue is proper because this is where one or more of the Defendants committed the tort giving rise to this case.

## III. GENERAL AND FACTUAL ALLEGATIONS

52. Plaintiff incorporates by reference the paragraphs above, as if set forth fully here.

53. This case arises out of an Incident that occurred at the Property on or about November 25, 2024, at approximately 11:00 a.m. ("the time of the Incident").

54. At all relevant times, Plaintiff was lawfully present at the Property as a business invitee and customer of Defendants.

55. Upon information and belief, Plaintiff was walking down an aisle of the Property with her shopping cart.

56. Upon information and belief, while Plaintiff was walking down the aisle, an unknown employee of Defendants' ("John Doe"), approached from behind Plaintiff while the employee was operating or otherwise guiding a flatbed cart that was stacked with boxes.

57. Upon information and belief, John Doe, acting recklessly, without warning or justification, rammed the flatbed cart and its contents into Plaintiff's body, causing Plaintiff to suffer immediate pain and bodily injury.

58. Upon information and belief, John Doe, through the flatbed cart, made physical contact with the Plaintiff's body that was unwanted by Plaintiff.

59. Upon information and belief, John Doe's actions were intentional and/or with reckless disregard, and placed Plaintiff in imminent apprehension of harmful and offensive physical contact, resulting in harmful and offensive contact.

60. Upon information and belief, at all relevant times, John Doe was acting within the course and scope of employment with Defendants.

61. At all relevant times, Defendants were owners of, performed operations, management, service, control, or other activities at or on the Property.

62. Defendants maintained the property as a large-scale retail store open to the public.

63. Upon information and belief, Plaintiff was shopping for groceries on the Property at the time of the Incident.

64. Upon information and belief, Plaintiff informed an employee of Defendants of the Incident and was transported via ambulance to the emergency room for emergency evaluation and treatment.

65. Upon information and belief, Defendants knew, or should have known, that Defendants' request and/or the request of another person with permission of Defendants, to Plaintiff, to have Plaintiff appear at a large-scale retail store, would have the effect of a person, such as Plaintiff, being required to enter the Property.

**A. <u>The Incident</u>**

66. Plaintiff incorporates by reference the paragraphs above, as if set forth fully here.

67. This case arises out of an incident that occurred at the Property on or about November 25, 2024, at approximately 11:00 a.m. ("the time of the Incident").

68. At all relevant times, Plaintiff was lawfully present at the Property as a business invitee and customer of Defendants.

69. Upon information and belief, Plaintiff was walking down an aisle of the Property with her shopping cart.

70. Upon information and belief, while Plaintiff was walking down the aisle, an unknown employee of Defendants' ("John Doe"), approached from behind the Plaintiff operating or otherwise guiding a flatbed cart that was stacked with boxes.

71. Upon information and belief, John Doe, without warning or justification, rammed the flatbed cart and its contents into Plaintiff's body, causing Plaintiff to suffer immediate pain.

72. Upon information and belief, John Doe, through the flatbed cart, made contact with the Plaintiff's body that was unwanted by Plaintiff.

73. Upon information and belief, John Doe's actions were intentional, offensive, and placed Plaintiff in imminent apprehension of harmful and offensive physical contact, resulting in harmful and offensive contact.

74. Upon information and belief, at all relevant times, John Doe was acting within the course and scope of employment with Defendants.

75. Upon information and belief, immediately before and at the time of the Incident, Plaintiff had considered the weather conditions and, accordingly, took action to protect herself from any potential danger, including, but not limited to:

   a. walking carefully and cautiously;

   b. observing the surrounding environment for any potential dangers; and

   c. minimizing or eliminating distractions.

76. The Incident caused Plaintiff to sustain bodily injuries.

77. Upon information and belief, shortly after the Incident, Plaintiff was retrieved from the Property by ambulance and received additional medical attention at the emergency room soon after that time.

78. Upon information and belief, Plaintiff developed other injuries, conditions, and symptoms due to the Incident.

79. Upon information and belief, Plaintiff subsequently sought and obtained other treatment from various health care providers for her Incident-related injuries, conditions, and symptoms.

80. Plaintiff was not comparatively negligent in contributing to or causing either the Incident or her injuries, damages, and losses.

81. At all relevant times, Plaintiff mitigated her injuries, damages, and losses.

## IV. CLAIMS FOR RELIEF

### A. FIRST CLAIM FOR RELIEF
**Colorado Premises Liability Act [C.R.S. §13-21-115(3)(c)]:**
**Liability to Invitee *(Against ALL Defendants)***

82. Plaintiff incorporates by reference the paragraphs above, as if set forth fully here.

83. At the time of the Incident, Defendants qualified as a "landowner" of the Property, within the meaning of C.R.S. §13-21-115, because:

a. each was an authorized agent or a person in possession of the property; and/or

b. each was a person legally responsible:

i. for the condition of the property; and/or

ii. for the activities conducted or circumstances existing on the property.

84. At the time of the Incident, Plaintiff was shopping for groceries on the Property.

85. Plaintiff was at the time of the Incident on the Property engaging in business with Defendants, and/or Defendants expressly and/or impliedly represented to Plaintiff, that Plaintiff was requested, expected, or intended to enter onto or remain on the Property.

86. As a result, at the time of the Incident, Plaintiff was an "invitee" on the Property, within the meaning of C.R.S. §13-21-115(3)(c), (5)(a).

87. Because Plaintiff was an "invitee," Defendants owed Plaintiff the duty to use reasonable care to protect against dangers of which they knew or should have known, including the activities of their employees.

88. Defendants and its employees and/or agents knew, or in the exercise of reasonable care should have known, of the dangers and conditions of the Property.

89. Defendants and its employees and/or agents knew, or in the exercise of reasonable care should have known, that customers and patrons of the Property would be present in aisles and walkways of the large-scale retail store and that employees should use caution when operating flatbed carts throughout the Property.

90. Defendants and its employees and/or agents owed a duty to Plaintiff to prevent her from incurring injuries as a result of dangers of which Defendants knew, or with the exercise of reasonable care, should have known about.

91. Defendants are and/or were legally responsible for the condition of the premises or for the activities conducted on the Property and that of its agents and/or employees and the unreasonable failure to exercise reasonable care to protect Plaintiff and others similarly situated.

92. At the time of the Incident, Defendants and its employees and/or agents failed to use reasonable care to protect against the dangers that occurred by permitting their employee to operate a flatbed cart in a manner that created an unreasonable risk of harm to customers.

93. This dangerous condition caused Plaintiff to sustain injuries, damages, and losses, including, but not limited to: bodily injuries; permanent physical impairment; disfigurement; economic damages, including, but not limited to: past and future medical expenses (including medical bills, medical mileage, and out-of-pocket expenses) and past and future wage loss (including lost wages, lost earning capacity, and loss of time); and non-economic damages (including mental anguish, pain and suffering, loss of enjoyment of life, and inconvenience).

94. Defendants actually knew about this dangerous condition; alternatively, as a person using reasonable care, Defendants should have known about this dangerous condition.

95. Defendants failed to use reasonable care to protect Plaintiff from injuries, damages, and losses resulting from this dangerous condition.

96. The failure of Defendants to do so was a cause of Plaintiff's injuries, damages, and losses.

### B. <u>SECOND CLAIM FOR RELIEF:</u><br>Colorado Premises Liability Act [C.R.S. §13-21-115(3)(c)]:<br>Liability to <u>Licensee</u> (Against <u>ALL</u> Defendants)<br>*[IN THE <u>ALTERNATIVE</u> to Plaintiff's <u>First</u> Claim for Relief]*

97. Plaintiff incorporates by reference the paragraphs above, as if set forth fully here.

98. At the time of the Incident, Defendants qualified as a "landowner" of the Property, within the meaning of C.R.S. §13-21-115, because:

    a. each was an authorized agent or a person in possession of the property; and/or

    b. each was a person legally responsible:

        i. for the condition of the property; and/or

        ii. for the activities conducted or circumstances existing on the property.

99. At the time of the Incident, Plaintiff was shopping for groceries on the Property.

100. By way of grocery shopping, Plaintiff was at the time of the Incident on the Property engaging in business with Defendants, and/or Defendants expressly and/or impliedly represented to Plaintiff, that Plaintiff was requested, expected, or intended to enter onto or remain on the Property.

101. As a result, at the time of the Incident, Plaintiff was a "licensee" on the Property, within the meaning of C.R.S. §13-21-115(3)(b), (5)(b). Because Plaintiff was a "licensee," Defendants owed Plaintiff a duty to use reasonable care:

    a. with respect to a danger on the property which Defendants created, and about which they actually knew before Plaintiff incurred any injuries, damages, or losses; and

    b. to warn about a danger on the property which Defendants did not create, but about which they actually knew, and which was not a danger that ordinarily would be present in aisle or walkways of a large-scale commercial retail store, such as Wal-Mart Supercenter #905, located on the Property.

102. This dangerous condition caused Plaintiff to sustain injuries, damages, and losses, including, but not limited to: bodily injuries; permanent physical impairment; disfigurement; economic damages, including, but not limited to: past and future medical expenses (including medical bills, medical mileage, and out-of-pocket expenses) and past and future wage loss (including lost wages, lost earning capacity, and loss of time); and non-economic damages (including mental anguish, pain and suffering, loss of enjoyment of life, and inconvenience).

103. The operation of a flatbed cart loaded with boxes through active customer aisles at the Property constituted a dangerous activity/circumstance that was not a danger that ordinarily would be present or reasonably expected by licensees, because Defendants should have taken appropriate actions to prevent, control, and/or mitigate this danger and should have properly performed these actions, including, but not limited to: establishing and enforcing safe traffic patterns for in-aisle equipment; ensuring loads did not obstruct the operator's line of sight; using spotters and audible/visual warnings when operating behind customers; maintaining a safe following distance and lookout; restricting or re-routing stocking during periods of high customer traffic; and/or posting warnings when such equipment is in use.

104. Defendants:

a. acting through their on-duty employee/agent, created this dangerous condition [by operating a flatbed cart loaded with boxes in a customer aisle without adequate lookout, clearance, or visibility] and therefore knew or, in the exercise of reasonable care, should have known, of the danger before Plaintiff incurred any injuries, damages, or losses; or

b. did not create this dangerous condition, but actually knew about it, and it was not a danger that ordinarily would be present on one's property, such as the Property [if Defendants used appropriate caution when operating a heavily loaded flatbed cart through active shopping aisles during business hours].

105. Defendants failed to use reasonable care:

a. with respect to this dangerous condition which Defendants created [as detailed above], and about which they actually knew before Plaintiff incurred any injuries, damages, or losses; and/or

b. to warn about this dangerous condition which Defendants did not create, but about which they actually knew, and which was not a danger that ordinarily would be present in aisles and walkways of a large-scale commercial retail store, such as Wal-Mart Supercenter #905, located on the Property [as detailed above].

106. The failure of Defendants to do so was a cause of Plaintiff's injuries, damages, and losses.

## C. <u>THIRD CLAIM FOR RELIEF:</u>
## <u>Negligence</u> *(Against <u>ALL</u> Defendants)*
## *[IN THE <u>ALTERNATIVE</u> to Plaintiff's <u>First AND Second</u> Claims for Relief]*

107. Plaintiff incorporates by reference the paragraphs above, as if set forth fully here.

108. Defendants owed a duty to Plaintiff to exercise reasonable care in operating and/or overseeing the Property to keep it free of dangerous conditions and/or deal with and/or mitigate any dangerous conditions.

109. At the time of the Incident, the Property contained a dangerous condition, activity, and/or circumstance, namely, an on-duty employee operating a flatbed cart loaded with boxes through an active customer aisle at Wal-Mart Supercenter #905 without adequate lookout, visibility, warnings, or traffic controls.

110. Defendants breached their duty to exercise reasonable care with respect to activities conducted on the Property, including the operation of in-store equipment, by:

a. operating a flatbed cart behind Plaintiff without maintaining a proper lookout or safe following distance;
b. loading the cart in a manner that obstructed the operator's visibility;
c. failing to use spotters, audible/visual warnings, or other traffic controls while moving merchandise through active customer aisles;
d. routing or permitting the cart to travel through crowded aisles during peak customer traffic;
e. failing to implement, enforce, and train employees on safe in-aisle equipment operation policies and procedures; and/or
f. otherwise permitting the dangerous activity/circumstance that resulted in Plaintiff's injuries.

111. Defendants' breach of their duty to Plaintiff caused the Incident to occur.

112. Defendants' breach of their duty to Plaintiff, resulting in the Incident, caused Plaintiff to sustain injuries, damages, and losses, including, but not limited to: bodily injuries; permanent physical impairment; disfigurement; economic damages, including, but not limited to: past and future medical expenses (including medical bills, medical mileage, and out-of-pocket expenses) and past and future wage loss (including lost wages, lost earning capacity, and loss of time); and non-economic damages (including mental anguish, pain and suffering, loss of enjoyment of life, and inconvenience).

## D. FOURTH CLAIM FOR RELIEF: Assault *(Against ALL Defendants)*

113. Plaintiff incorporates by reference the allegations above as if fully set forth herein.

114. On November 25, 2024, while Plaintiff was lawfully present on the Property as a business invitee, John Doe, acting within the course and scope of employment, operated a flatbed cart loaded with boxes.

115. Upon information and belief, John Doe, acting intentionally, recklessly, and/or without due care, rammed the flatbed cart and its contents into Plaintiff's back.

116. John Doe's conduct placed Plaintiff in imminent apprehension of harmful and offensive contact and resulted in harmful and offensive contact.

117. The employee intended to cause such apprehension and/or knew with substantial certainty that such apprehension and contact would occur.

118. As a direct and proximate result of the employee's conduct, Plaintiff sustained injuries, damages, and losses, including bodily injuries, pain and suffering, emotional distress, medical expenses, and loss of enjoyment of life.

119. To the extent the assault was committed within the course and scope of employment, Defendants are vicariously liable for such damages under *respondeat superior*.

### E. FIFTH CLAIM FOR RELIEF: Battery *(Against ALL Defendants)*

120. Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

121. On November 25, 2024, while on the Property as an invitee, John Doe intentionally caused a harmful or offensive contact with Plaintiff by driving, pushing, or propelling a flatbed cart into Plaintiff's body; alternatively, John Doe acted with knowledge that such contact was substantially certain to occur.

122. Physical contact to Plaintiff's body occurred and was harmful or offensive to a reasonable sense of personal dignity.

123. Plaintiff did not consent to the contact.

124. As a direct and proximate result of the unwanted physical contact, Plaintiff suffered bodily injury, pain and suffering, inconvenience, impairment, medical expenses, and other damages to be proven at trial.

125. To the extent the battery was committed within the course and scope of employment, Defendants are vicariously liable for such damages under *respondeat superior*, to the extent permitted by Colorado law.

126. Plaintiff reserves the right, consistent with Colorado procedure, to seek leave to amend to assert exemplary (punitive) damages upon a prima facie showing after initial disclosures and discovery.

### F. SIXTH CLAIM FOR RELIEF:
### ***Respondeat Superior*: Vicarious Liability *(Against ALL Defendants)***

127. Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

128. At all relevant times, John Doe was an employee/agent of Defendants, acting within the course and scope of that employment and in furtherance of Defendants' business, including transporting and stocking merchandise on the sales floor.

129. The tortious conduct described herein by John Doe, including, without limitation, the negligent operation of a flatbed cart in a customer aisle that struck Plaintiff, occurred on the premises and within the scope of employment.

130. Accordingly, Defendants are vicariously liable under the doctrine of *respondeat superior* for all damages legally caused by the torts of John Doe.

## V. REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff, Janina Tabaka, requests that judgment be entered in her favor and against the Defendants (1) Walmart, Inc., (2) Wal-Mart, (3) Wal-Mart Supercenter #, (4) Wal-Mart Supercenter, and (5) De Lage Landen Financial Services, Inc., in an amount, to be determined at trial, to fairly compensate Plaintiff for her injuries, damages, and losses, including, but not limited to:

- physical bodily injuries;
- permanent physical impairment;
- economic damages, including, but not limited to: past and future medical expenses (including medical bills, medical mileage, and out-of-pocket expenses) and past and future wage loss (including lost wages, lost earning capacity, and loss of time);
- non-economic damages (including mental anguish, pain and suffering, loss of enjoyment of life, and inconvenience);

- interest (including post-incident, pre-filing, and post-filing interest) per statute and as otherwise permitted under Colorado law;
- costs (including, but not limited to, court costs and expert witness fees);
- reasonable attorney's fees per statute and as otherwise permitted under Colorado law; and
- such other and further relief as the Court deems just and proper.

Dated: September 15, 2025.

Respectfully submitted,

LAW OFFICES OF DIANNE SAWAYA, LLC

*s/ Ashlyn N. Smith*
Nathan T. Mattison, Esq.
Ashlyn N. Smith, Esq.
*Attorneys for Plaintiff*

Plaintiff's address:
Janina Tabaka
3423 Celestial Drive
Berthoud, CO 80513